The last matter on for argument today is United States of America v. Benicio Nicolas Pereda 25-4461 and each side has 15 minutes. I'd like to reserve four minutes for rebuttal and I'll try to watch my clock. Okay, these are government appeal days, are they not today? They sure are, your honor. The district court in this case suppressed the evidence by holding that as a matter of law the probation officers assigned to monitor defendant Benicio Pereda had no basis even for a reasonable inference that he resided in the trailer. No basis for a reasonable inference despite the assigned location monitoring officer making daily observations of Mr. Pereda in precisely the trailer's location. Did they ever go by the location and just check it out? They did. Detective Amhadi testified that he observed Mr. Pereda in the truck in the same location, actually inside the truck in the driveway. This was... Did they think that he was just hanging out in the truck? You know, he didn't go into detail. Or hanging out at the house? But that, you know, the little dots are on the other side of the house. The little dots are in the sort of drive going north, which is where the trailer was parked that morning. Does the record say what type of trailer this is? It is a trailer that's staked down, and I would point the court to Exhibit 101, which was the body cam, which shows sort of the type of trailer that was at issue. It was a trailer to be pulled by a truck, so it was staked down. So then you can put it, but it was on blocks. It was on blocks at the time, that's correct. It was on blocks, you know, next to a Ford F-150, capable of pulling it, but not connected at the time of the search. So in it was hooked, there was some connection for power to the house, right? That's right. So the testimony was, and it's reflected in the body cam footage as well, was the trailer was about 15 feet from the main residence, and the officers actually observed an extension cord running from the house to the trailer before the search. That was on the date when they went out there, not when they'd been out there before.  So when they had been out there before, they had not seen the trailer. This was one or two months before the search, when Detective Amhadi had seen defendant in the truck, but did not observe a trailer at that point. So when they arrived at the house, they knocked on the door, correct? At the house. They did, correct. And they asked for him. They asked where he was, and it was the mother of defendant's girlfriend who said, he's in the trailer. There was some dispute about exactly the wording that she used, but I think we've at this point settled. They didn't ask, they didn't follow up and ask, well, is he living there? Correct. They did not at that point. They then went to the trailer and then heard, recognized his voice inside and ordered him out. So do we know who owns the trailer? We do. Well, we know who is- What do we know on the record at the time? In the record, and this was submitted as one of the exhibits to the suppression briefing, the trailer is registered to defendant's mother, Thelma Pareda. This was also displayed as a permit in the trailer's windshield. The officers did not observe that permit before the search. So girlfriend's mother says he's over in the trailer. So they go over to the trailer, and he doesn't come out right away, but he eventually comes out? Correct. So if, and they find drugs in the trailer and in the truck, right? The drugs are in the truck, the roughly three kilograms of the fentanyl heroin and- But what do they find in the trailer? They find the ammunition in the trailer, and I believe it's in a safe. So that's part of the evidence in the crime part of things. That's right. And the other things in the trailer that they find that would be relevant at trial, there's I think a ledger of payments that's in his handwriting rather than the girlfriend's. So there is other evidence that sort of connects him to the drugs in the truck, in the trailer. They are sort of interconnected. And his conditions, he's parole searchable? That's right. And what does that say you can do? It says they can search his residence, his property under his control, and his person with or without a warrant at any time. It's the standard PRCS search condition. And he was on a low jack, so that's how they could know where he was? Right. He had a GPS angle monitoring that gave the real time location displayed on a map for the officers. So the officer actually was making daily observations on this map and then rechecked them before going out to visit the trailer that day. So why were they going out to do a check? What was the purpose? The impetus was they had, so they were aware that defendant had been, had had previous drug trafficking convictions. And what they saw him doing in the location monitoring was taking trips to Los Angeles, like Los Angeles area, he's in Santa Monica at, or excuse me, Santa Barbara. Taking trips to Los Angeles at 2, 3 in the morning and, you know, going and being at an empty parking lot of a, you know, a business that's closed. And so they suspected he was going and potentially doing drug transactions. He could have been doing anything else, but either way it was evidence of a parole condition violation because it was an unauthorized trip of more than 50 miles. So what did the district court, what was the problem the district court had with the search? And why would you say that was wrong? So I think the problem that the district court had, and I think given the facts that we've laid out, this is not a close case under the facts and the government's view. And so there is a question, how did the district court get there? I think the district court got there by misreading Granberry as we set out in our brief. There is this line in Granberry that builds on some language in prior Ninth Circuit cases that says this is a relatively stringent standard requiring strong evidence of residence. Now, I think this court cleared some of that up in Berry, in the court's opinion in Berry, by saying this is not probable cause plus. There's no such thing as probable cause plus. It would make no sense to apply probable cause plus to a search of a parolee who has lower Fourth Amendment protections than anybody else. But I think what the language in Granberry still does is suggest the district courts to do just the kind of divide and conquer analysis where you look at the evidence and you go, okay, well, Granberry says it needs to be strong evidence, so is this strong evidence? And if not, we chuck it in the waste bin. We know the district court did that because the district court said she was doing that. The district court said, oh, well, this evidence just shows that he was present in the trailer, and therefore it doesn't support an inference of residence. I mean, that is defying common sense. Why? A lot of people just stay in trailers. Sure. And if they're staying, if the- You know, it's just the trailers in your backyard. You could drive around all the time and see people with trailers in their backyards.  And if your GPS- Why is that a clear inference? And if your GPS location that the officers knew and actually reviewed shows you staying in the trailer overnight on a regular basis- But you just said they didn't know there was a trailer there. They knew he was staying in the location of the trailer. They didn't know what- He could have been staying in a tent, right? You have a lot of people live in tents. Well, it could have been a shed. It could have been an ADU. They didn't know what it was. I think this court's opinion in Franklin shows that that doesn't matter, where they- In Franklin, they have the tip that he's in a hotel. They don't know where in the hotel. They don't get that information until they go there and they talk to the front desk. Or just like they talk to the- Well, they could have asked the mom. They could have- What's the evidence that he was staying there at that location? What is his connection in terms of the evidence at that location? So it's the GPS tracks showing regular overnight stays specifically on this location, not in the main residence. Right? I mean, that's the key. When you look at the map, they are clustered directly on the trailer. And timing-wise? The maps that were submitted were the eight days prior to the search, but then the officer testified he'd been reviewing the same tracks for until since March of the same year and then saw a similar pattern. They also knew he was not residing at his listed residence in Lompoc, which he can have more than one residence. Granberry's very clear on that. But this court has found relevant when a defendant is not regularly residing in the listed residence, that's relevant to whether they're residing somewhere else. On a parole search, let's say, because you're supposed to keep your parole agent advised where you are. Right. Okay. If you haven't listed that as a residence, is that a basis for your parole agent to go out and check to see what's going on? Absolutely. I think nobody, I think, contests that they could go ask him what's going on. I think the question is, you know, probable cause of residence. Could they go in? Could they go in, exactly. Could they go into the trailer? Right. And I think the question is, when you add all these facts together, you know, are we here on, you know, sufficiency after a guilty verdict? No. We're here on probable cause review. Is there a reasonable inference of residence based on facts known to the officers? I think common sense says there has to be. So counsel, one thing, one thing Granberry says that you could only look at a residence, you can't look at, and it distinguishes between residence and property under control and suggests that you can't use property under control for a residence. Right. But this is a vehicle, but, and Granberry said that property under control could be a vehicle. So do you think, because it's a trailer, which could be a residence or a vehicle, then Granberry's no longer governing on that point and we could rule that under, that this was a property under control? I think, I think that's correct. I think the question this court faces on the property under control basis for the search is did Granberry announce a blanket rule applicable to every case anytime the residence is in question? I think that answer is no. Granberry is both explicit that it's just talking about the facts of that case, whereas here it is abundantly clear that the search property is a residence. We're talking about a brick and mortar apartment in that case. I think this court also in Cervantes, the more recent Cervantes case, does the analysis that we are saying the court should do here on the property under control basis where it says, okay, they didn't have grounds for residence, the defendant in that case was staying in a hotel room, it wasn't his residence, but we are going to look at whether he controls the room still. So it was not mutually exclusive in Cervantes, it's not mutually exclusive here given the sort of long line of authority saying vehicles are property under control. And is one prong stronger than the other? Residence versus property under control, or are they equally strong? I think they're equally strong. I think the residence is stronger because we have the evidence of the overnight stays. In terms of evidence of control, I don't think anybody's actually contested that he controlled the trailer. That wasn't the argument. The argument is sort of legal under Granberry. So I think it's uncontested he controlled it, he was inside it, his stuff was inside it. But I think given the state of the record and just sort of the pile of evidence of residence, I think it's very hard to conclude otherwise. From your perspective, is there something that needs to be clarified in publication on this? I think the court could usefully, so I think the court, from the government's perspective, was very clear in Berry already that Granberry is not probable cause plus. I think what the court could usefully do in this case, in addition to that, is clarify that when Granberry says strong evidence, that is no longer good law in light of Westby, where we are not supposed to divide and conquer, we're not supposed to look at each individual fact and discard it if it's insufficient on its own. To the extent that, I mean, the proof is in the defense brief in this case where they try to defend the probable cause plus reading of Granberry, notwithstanding that we already have Granberry to go from. So I think this court, without going en banc, and obviously there are parts of Granberry that this panel could not overrule without en banc reading, but I think this court could clarify that to the extent Granberry can be read as requiring strong evidence inconsistent with this sort of guidance in Westby, this totality of the circumstances common sense inferential approach, that is not probable. Isn't the primary concern with Granberry is the concern for third people, third parties'  Right. I think that's... I mean, that's really what all... This really all comes down. Otherwise, you know, wherever the parolee is, you just go wherever and walk in and check on the parolee. I think that was critical. That's not right. Right. I think that was critical to the holding that probable cause is required in the first place, which ultimately comes from Motley, the court's en banc decision in Motley. And that is a holding that I think the court would need to go en banc to review, but we're not questioning that. So the reasonable inference... Give me all the... State again all the facts in your view that lead to a reasonable inference that this was his residence when they showed up there? GPS maps clustered specifically on the location. And those were... They... Was that, like, up to the day before, or...? It was up to the day of.  Right. Eight days worth of... It was eight days of maps and then testimony that those were consistent with the three months prior. Okay. So we got that. Okay. That's one. We have that the defendant took parole visits, home visits in Goleta. The resident of the house said he was in the trailer. Officers saw signs the trailer was being used as a residence. The fact that his truck was parked immediately next to the trailer... The F-150. There's some evidence about that, right? Right. The F-150. Exactly. Do they know that the F-150 was his truck? They do. And I think this is exactly... How did they know? Because of Amhadi's prior observations. And I think this is exactly... And I do want to make sure I mention the truck in whatever remaining time. I think this is exactly an example of the failure to extend common sense inferences. Amhadi sees defendant in the truck five times. He sees defendant in the truck in the precise location the truck is parked that day. To say that there's not even a reasonable inference that that's the same truck is just a failure to extend the kind of reasonable inferences in exactly the way that the Supreme Court said district courts are not supposed to do. So I think, if I understand the record, the officer had run the truck previously when he'd seen it. Not on that day. Right. But on that day, they didn't run the license plate again. They reran it, I think, 15 minutes after the search of the truck started. Right. But the officer was firmly of the view it was that truck. Right. He said, I think it's the same truck that he's been driving previously. He said it's on the body cam at the time. I see I'm out of time. You are. Any... No, it's a further question. All right. Thank you. Thank you. Good morning. Good morning. May it please the court. Hunter Haney for Benicio Pareda. This court has consistently held that warrantless searches of a California community supervisee's home or property must be justified by probable cause that the home or property is indeed the supervisee's. The district court here soundly applied these precedents to conclude that the police lacked probable cause that the trailer and the truck at issue were Mr. Pareda's. Unless the court prefers otherwise, I'll address the two contentions regarding the trailer before turning to the truck. There was no probable cause that the trailer was Mr. Pareda's residence. The GPS data... Well, okay, but I guess Officer Macedo or whatever testified that the GPS data regularly placed Pareda at the location of the trailer, which was located only about 15 feet from the Goleta house. When he arrived at the Goleta house, one resident told him that the Pareda was in the trailer and he also saw that the trailer had an extension cord plugged into the connecting house. Why wasn't that enough for them to have probable cause to conclude the trailer was actually the part... Was part of the Goleta address where Pareda had been residing? Because there's no question that regular presence overnight at an address is relevant to the analysis, but this court has repeatedly held that more information beyond that is necessary to actually establish residence. Franklin, Granberry, and Howard all explicitly hold that. In this GPS evidence at most, placed Mr. Pareda as an overnight guest at the location during this eight day span and even that evidence... And plus the car, we got the car. The car was not observed before they went into the trailer. There's no evidence of that. In fact, the officers were discussing while they were searching the trailer, the truck, that's when the truck first actually came up a minute and a half into the actual body worn camera. So there's no evidence on that point that they were aware of the truck even at the point that the trailer had already begun being searched. But regardless, by the government's calculations, this GPS data, which is what they're primarily relying on, placed Mr. Pareda at the Goleta location 40% more often than Lompoc, which again is not sufficient to show actual residence without additional evidence gathering. It wasn't clear that when... 40% more. What are you talking about? I believe in their reply brief, they did a word search of the GPS data in the ER and said that 40% more of the time over that eight day span, he was at the Goleta location as opposed to the Lompoc location. But he regularly... Oh, I'm sorry. Go ahead. But he regularly overnighted there, correct? During that eight day period, just reviewing the GPS data, he was at the Goleta location exclusively a few of those nights. And then a couple of the nights, he was at Lompoc and Goleta. And on one night, there was just no data during that eight day span. So it was mixed. And without any other evidence gathering that is again so characteristic of these cases, including Your Honor's decision in Barry from last year, it just wasn't clear that... We're talking about just an eight day span. The officers didn't know that the trailer was even there. The parole officer was observing him at that location longer, but he just went back. He was observed at the residence. And there needs to be probable cause. It would be a different question if the officers had searched the residence. But here, the officer searched the trailer, which is a separate residence, of course. And there needs to be distinct probable cause as to the location search as this court held on Bonk and Motley and has reemphasized in Granberry and this whole line of cases. Would you agree that probable cause analysis isn't frozen at the time the officers first arrived at the Goleta evidence? So at least in theory, hypothetically, even if the officers did not have probable cause to search the trailer before arriving at Goleta address, subsequent events could have allowed them to develop probable cause. Because you're saying they should have searched the residence. But other things happened after they got there. The woman in the residence said, hey, he's over there. He's there. Again, presence. And 15 feet away. That's right, presence. And it's got an extension. Right. So there was presence. Again, Ms. Loza's mother said that he was there. And in these other cases that have been at issue, including, you know, the government heavily emphasizes Franklin, there is someone who says, yeah, he's living there. Or yeah, he rented the room. But here, all you have is the mother pointing them to the trailer saying, yeah, he's there. He's an overnight guest. And that is not sufficient. Especially when, you know, there's no previous observation of the trailer and that these clusters were in a location where there were other structures, including what appeared to be an ADU. So what we know at most is he was there overnight several evenings over an eight-day period. Many, many times. Which is a probable cause for a residence, right? I disagree. Because I think it's consistent with any couple in the early stages of a relationship. I think it's consistent. But that's not a probable cause. You don't have to rule out every other innocent explanation. You just, it just has to support the guilty inference, which all these facts do. This is, yeah, probable cause of residence. A fair probability analysis. So just because there's an innocent explanation that he's just overnighting guests. But that doesn't matter if all these facts also suggest residence. I think there is nothing more, in terms of other facts, beyond presence. And that was basically the disresult. So over a long period of time, at night. Presence over an eight-day period, at night, on some nights. Okay, there's some dispute about that. Yeah, I don't think there's any dispute that he was not in the trailer. The trailer wasn't even known until they got there. And you know, I think, on top of that. Because the GPS showed that there's some location outside the residence that he was there multiple times at night, right? And then you go to the residence, the mom says, oh, in there, in the trailer. All that just confirms everything that, you know, they were thinking. That he was staying at this place, and the mom pointed out exactly where he was staying. And he's there. It confirms that he was there, exactly. It does not confirm that he was a residence. And what you see in a lot of these other cases. You don't have to confirm he's a resident. You just have to have probable. No, you have the probable cause of a residence. And the case law distinguishes between probable cause as to residency and probable cause as to presence. And what you often see is the officers asking questions as to whether or not someone's staying there. You have the presence of a key is another factor that Barry, of course, emphasized. You have officers actually doing prolonged surveillance of the trailer. What was he wearing? His clothing? Yeah. I, from the body on camera, it was something white. I'm not sure if I recall exactly the print. Pajamas or anything? Pajamas? I think he was in shorts of some sort, right? I don't know if he was in pajamas or not. But this court, of course, emphasized in Howard that even the sight of the defendant in the girlfriend's apartment coming out in his boxer shorts is not enough. Because again, all that shows his presence as an overnight guest. But why aren't you just dividing and conquering here? You're taking each one and saying, okay, that's not enough. But it isn't each one thing here. There's a whole gob of things. No, we're analyzing the totality of circumstances. And the court has identified four relevant factors that it emphasizes in these cases. And none of them are present here beyond the observations through the GPS evidence of presence. So if, I mean, take what you're saying is true, like all these inferences can suggest that he's an overnight guest. But all of this could also suggest he's a resident. Then, you know, why do we have to pick one or the other? And then a probable cause saying that we take both of these inferences and the officers pick a reasonable one? I think that the only reasonable inference here is presence and not residence. Because of the fact that it wasn't his residence. It wasn't his residence? That there was no observation of a key. No one had made a statement that he was residing there. I'm sorry? He was inside of it. Why would you? I think that's present in most of these cases. The defendant is actually seen inside of the unreported address. That's because he's known outside of the residence. And they're trying to link him to the residence. He's known inside the residence. Yeah, I mean, again, I think any overnight guest would be found inside the residence by definition. So do you think there was probable cause to search the residence? Not the trailer? Did I hear that? There... I think that would be a closer case, given what the officers had actually done. But I think they would have needed to actually surveil the residence to some extent to actually establish that fair probability. But that, of course, is not the case. Did you not tell me a little bit ago that they would have had probable cause? I think it would be a closer question. Absolutely. The house? I said the house. The house. And these are, of course, you know, the court has to distinguish between the two. Because trailers have been recognized, of course, as residences. And that gets me to the second sort of part of this analysis I want to make sure I have time to address. Let me just ask you one question before you do that. Through our case law, how do we define or explain what residence is in this context? Yes. So that goes to the second question as to whether or not this trailer was a residence as opposed to Mr. Pareda's residence. This court in Granbury, you know, made clear that, you know, reading residence into the property under control provision would render the residence provision superfluous. And it's emphasized that since many times California courts have, you know, read the provisions consistently with that. The relevant factors as to whether something is a residence is defined by the Carney test that the Supreme Court has laid out. And here it's not even a close question. The trailer wasn't readily mobile, which is the first factor, and that it was propped up by stakes, it was parked, it wasn't hitched to a vehicle, and it had no motor. The second factor is whether the vehicle or the place at issue is subject to extensive regulation and inspection. There's no evidence of that here. We have this permit that kind of suggests that it was a long-term fixture in the neighborhood. And then third is whether the location is situated such that an objective observer would conclude that it was a residence. So here you have that it was connected to the utilities on a side street and police were told that it was occupied and heard activity inside. So really under all three factors under Carney, this was, this trailer unquestionably qualifies as a residence. And I don't take the government to be disputing that factor. What they're really making, the argument that's really being made here is that categorically trailers are not subject to this Granberry point of law about, you know, the redundancy between the two conditions. And I think... How do you respond to the government's point that Granberry uses the term plus, you know, extra evidence? So I don't take Granberry or this line of cases to be imposing anything above a probable cause standard. It does... All these cases do, when you read them carefully, they do mention strong evidence as being required. But they also reference the totality of circumstances in the fair probability language that has animated Supreme Court case law, both pre and post-Wesby. So I don't think that there's, you know, really any... I don't think that's ultimately dispositive because I do think we win under the fair probability test. So you're saying Granberry doesn't impose a new test, even though it uses the word strong... That actually predates... That strong evidence language actually is from the en banc decision in Motley. So it's... But it's not said just in a new... Yes. Absolutely, Your Honor. And so again, I think what the government, the point the government's making about Granberry is that it's limited to brick and mortar residences, but I do not read it that way. I don't see any mention of brick and mortar residences, and this court has of course recognized that the Fourth Amendment can protect trailers as residences. That's bra-ha-sa-balos. I want to make sure with my remaining time I can address the truck as well, because that's the final piece of this. At best... Oh yeah, there's some damning evidence in the truck. So let's just say we agreed with you on the trailer. Is the truck off limits or do you have to... So it is. I don't know if the court needs to ultimately reach the fruits argument because I don't think it satisfies the property under control condition here. But yes, that would be an alternative way of reaching the issue or of not sort of upholding the district court's conclusion of suppression to hold basically that the evidence was excludable as an illegal search of the trailer. But again, I think the F-150 here, at best, what Detective Amjadi observed was that he thought, he was kind of speculating that this was in fact the same truck that he had seen Mr. Parada driving on this prior occasion and where his partner had run the tags. But he never actually verified the truck, which of course is a very common truck parked on a public street, that this was in fact the same truck. So at most he had a hunch. Was it on a public street? I thought it was next to the trailer in some way. It was next to the trailer on a public street, yes. Yes. It's a side street, but it was a public street, not a private drive of any kind. So at most he had a hunch and that is not enough to meet a probable cause standard. Amjadi had not seen Mr. Parada driving the truck that day. He didn't claim Mr. Parada had the keys. He didn't ask any questions to determine ownership and these are all factors that animate the cases in this area. Those are the things that are in your favor, but how many times had he been seen in a F-150 that was registered? A handful of times. A few times he had been seen at other locations and once at a couple months before at this location. So it just happens to be where he is right now? Yeah. Can we consider that? So yes, I think that's part of the calculus, but he had the information available to verify the plates. He did not use that and I think requiring more knowledge in this circumstances, in this particular circumstance, protects against searches of not just F-150s, but Toyota Camrys, other very common cars of law abiding citizens, just because they happen to be parked on a street by a parolee who is also suspected of driving that very common vehicle. It doesn't take much to look at your notes and check the plates to verify that it is in fact- So if he had checked the plates, that would have been good enough for you? I think so. Yes. Under this court's decisions in Motley, under this court's decision in Motley, probable cause has to be particularized to the location search. So are you suggesting there's a rule then that you have to verify the plates before you- No. I think that's one option available to the officer. I think what you also see in this line of cases, I point the court to Dixon, is the defendant having the keys or questions and answers that were available to the officers because there were many people on the scene here, is this the defendant's truck? It's pretty straightforward and there were people who were willing to talk to the officers. Let me find out, does anyone have any additional questions? Okay. The other thing is we used up all the time of the appellant, do any of my colleagues have any additional questions in line of appellee's argument? All right. So, we're done. Thank you, Your Honor. We'd ask the court to refer- All right. Thank you both for an excellent argument. This matter will stand as admitted and we're in recess until tomorrow at night. All rise.
judges: PAEZ, CALLAHAN, BUMATAY